UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEENAN VERNER,

        Plaintiff,

                                            Case No.
-vs-                                        Honorable
                                            Magistrate

CITY OF SOUTHGATE, M. GRATZ (#117)
and N. MARONEY (2901), jointly and severally,
and in their individual capacities.

        Defendants.

_____/

| | |
|---|---|
| Hugh M. Davis (P12555) | Shaun P. Godwin (P74500) |
| Cynthia Heenan (P53664) | Co-counsel for Plaintiff |
| Constitutional Litigation Associates, PC | Godwin Legal Services, PLC |
| Attorneys for Plaintiff | 450 W Fort St, Ste 200 |
| 450 W. Fort St., Ste. 200 | Detroit, Michigan 48226 |
| Detroit, MI 48226 | 313-288-2826/Fax: 313-457-1670 |
| (313) 961-2255/Fax: (313) 961-5999 | shaun@godwinlegal.com |
| Davis@ConLitPC.com; | |
| Heenan@ConLitPC.com; | |
| Info@ConLitPC.com | |

_____/

## COMPLAINT AND JURY DEMAND

      Plaintiff, KEENAN VERNER ("VERNER"), through his attorneys Hugh M. Davis and Cynthia Heenan of Constitutional Litigation Associates, P.C. and Shaun P. Godwin of Godwin Legal Services, PLC, for his complaint states as follows:

## JURISDICTION AND VENUE

      1.     This action arises under the Fourth and Fourteenth Amendments of the United States Constitution. These rights are enforceable against state actors, pursuant to 42 U.S.C. § 1983 and 1985(3).

2.      Jurisdiction is conferred by 28 USC 1331 (federal question), 28 USC § 1343 (civil rights), and 28 USC § 1367 (pendent jurisdiction over state law claims).

3.      Venue is proper in the Eastern District of Michigan pursuant to 28 USC § 1391 inasmuch as the acts complained of occurred there and all of the parties reside there.

4.      The rights of Plaintiffs, under the Fourth and Fourteenth Amendment, to be free of unreasonable searches and seizures, equal protection and right to travel were clearly established at the time of the acts complained of on November 14, 2013, and Defendants are not entitled to qualified immunity.

**PLAINTIFF'S JURY DEMAND**

5.      Plaintiff hereby demands trial by jury of the above-entitled cause of action.

**PARTIES**

6.      Plaintiff KEENAN VERNER is a citizen of the State of Florida and was present in the City of Southgate, County of Wayne, at the time of the events complained of.

7.      Defendant CITY OF SOUTHGATE ("SOUTHGATE") is a municipal corporation organized under the laws of the State of Michigan that is located in the County of Wayne in the Eastern District of Michigan, which operates the Southgate Police Department ("SPD") as a part of its responsibilities and services.  At all times relevant herein, this Defendant acted under color of regulation, usage, custom, and law and pursuant to its policies and practices, as did the individual Defendants herein.

8.      Defendant M. GRATZ (#117) ("GRATZ") is, or was at the time of the matters complained of, a police officer employed by the City of Southgate who on information and belief is a resident of Wayne County, Michigan and who at all times was acting within the course and

scope and of his official duties and under color of state law. He is sued in his individual capacity.

9. Defendant N. MERONY (#137) ("MERONY") is, or was at the time of the matters complained of, a police officer employed by the City of Southgate who on information and belief is a resident of Wayne County, Michigan and who at all times was acting within the course and scope and of his official duties and under color of state law. He is sued in his individual capacity.

10. The acts of Defendants GRATZ and MERONY were undertaken intentionally, willfully, wantonly, maliciously and with callous disregard for Plaintiffs' rights,, entitling him to punitive damages under federal law.

11. Defendants GRATZ and MERONY acted in concert to violate Plaintiffs' civil rights.

## STATEMENT OF FACTS

12. On November 14, 2013, Plaintiff VERNER, an African American male, was driving a black 2012 Audi A8 L sedan with Florida plates, while heading northbound I-75 towards Detroit.

13. VERNER had a 1:00 p.m. business meeting in Detroit.

14. At approximately 12:25 p.m., VERNER was followed by a police car.

15. VERNER was then pulled over by the Defendants GRATZ and MERONY.

16. The stop was recorded on a police video and audio recording system.

17. VERNER was not exceeding the speed limit. Nor had he committed any suspicious act, civil infraction or criminal violation that would justify Defendants stopping him.

18. VERNER came to a stop on the right shoulder of northbound I-75.

19. Defendant GRATZ approached VERNER's car and asked him for his driver's license and registration, which VERNER provided.

20. Defendant GRATZ then asked VERNER where he was heading, to which VERNER responded "north." Then he added that he was headed to Detroit to purchase a vehicle.

21. Defendant GRATZ told VERNER to start his car and get off at the next exit.

22. VERNER started his car, exited I-75 onto the Dix-Toledo Highway and then brought his car to a stop on a side street off of Dix-Toledo.

23. Defendants GRATZ and MERONY pulled up behind VERNER's car.

24. Defendant GRATZ told VERNER to step out of the vehicle and asked him if he had any weapons on him, at which time VERNER stated that he had a CCW license and that there was a firearm in the vehicle.

25. Defendant GRATZ then patted VERNER down.

26. Defendant GRATZ asked VERNER how much cash he had on him, to which VERNER shook his head.

27. Defendant GRATZ asked VERNER where he was coming from, to which VERNER responded, "From Florida."

28. Defendant GRATZ asked VERNER if he had driven straight through, to which VERNER responded, "No, I didn't."

29. Defendant GRATZ asked VERNER where he had stopped, to which VERNER responded, "That's none of your business. What do you want?"

30. Defendant GRATZ stated, "I'm just asking you questions, man."

31. VERNER stated, "You're asking too many questions. I'm late. I've got a meeting with an auto dealer at 1 o'clock."

32. Defendant GRATZ asked VERNER where the meeting was, to which VERNER responded, "In Detroit."

33. Defendant GRATZ asked VERNER, "What's the name of the dealer? Do you have any information you can give me?", to which VERNER responded, "I have no information for you."

34. Defendant GRATZ asked VERNER, "Is there anything illegal in the vehicle?", to which VERNER responded, "Nothing."

35. Defendant GRATZ asked VERNER, "Is there any narcotics in the vehicle?", to which VERNER responded, "No narcotics."

36. Defendant GRATZ asked VERNER, "Any marijuana?", to which VERNER responded, "No marijuana. I don't smoke, I don't do none of that."

37. Defendant GRATZ asked VERNER, "Cocaine? Heroine?", to which VERNER responded, "I don't do any of that. Nothing."

38. Defendant GRATZ asked VERNER, "How much money do you have in the car?" to which VERNER responded, "No money in the car."

39. Defendant GRATZ asked VERNER, "How much money's in your pocket?", to which VERNER responded, "That's none of your business."

40. Defendant GRATZ asked VERNER, "Do you mind if I check the vehicle?", to which VERNER responded, "No, you can't search my vehicle."

41. Defendant GRATZ stated, "We're going to have to detain you. We're going to wait for a K9. You can just hang out right here, hang out right here."

42. VERNER asked Defendant GRATZ, "What's your name?", to which GRATZ responded, "When I get done I'll give you all my information."

43. VERNER stated to Defendant GRATZ, "You don't have a reason to stop me", to which GRATZ responded, "I did have a reason."

44. VERNER stated to Defendant GRATZ, "I didn't do anything, first of all", to which GRATZ responded, "Do you think I just made that up?"

45. VERNER asked Defendant GRATZ, "What did you make up?", to which GRATZ responded, "Do you think I just made this up and stopped you for no reason?"

46. VERNER stated to Defendant GRATZ, "Yes, you did stop me for no reason. I had my cruise control on for the last hundred miles. I didn't do anything.", to which GRATZ responded, "Come back here with me."

47. GRATZ placed VERNER in the back of the squad car

48. GRATZ and MERONY called for a police canine dog and discussed that it was going to take a while for SPD dispatch to locate a police canine.

49. MERONY stated, "This looking around is going to take forever."

50. VERNER repeated that there was no reason for him to be detained and that he has an appointment at 1:00 p.m.

51. At approximately 12:56 p.m., GRATZ opened the driver's side door of VERNER's car and searched that seat and door.

52. GRATZ then opened the passenger side door of VERNER's car and searched that seat and door.

53. GRATZ then opened the back door, searched the back seats of the car and then closed the car doors.

54. GRATZ complained that VERNER's car does not have VIN number stickers on the doors.

55. GRATZ stated on a phone call with an unknown person that the metal VIN plate is located on the dash and that he is not worried about the car being stolen.

56. At approximately 1:00 p.m., GRATZ returned to VERNER's car, opened the trunk looked around the inside of the trunk and then closed the trunk.

57. At approximately 1:23 p.m., Sgt. Garza of the Detroit Police Department appeared on the scene and spoke with GRATZ about what he had observed and informed GRATZ that his observations would only support an exterior search of the vehicle by the canine.

58. Sgt. Garza spoke to VERNER, who was still sitting in the backseat of the police car, and requested that he consent to an interior search of his vehicle with the canine.

59. VERNER responded, "No, go ahead and have your dog do whatever you do."

60. VERNER complained to Sgt. Garza he has been sitting there for 55 minutes for no reason.

61. GRATZ stated to Sgt. Garza that, "It could be nothing, but I do interdiction so I definitely have a little bit of experience."

62. Sgt. Garza led the canine around VERNER's car and then opened vehicle doors allowing the canine to examine the interior. Sgt. Garza told GRATZ that canine had shown an "interest" in the vehicle, but that "interest" was not enough to continue searching.

63. Sgt. Garza explained to GRATZ that canine's have a 3-point system where "interest" is 1 point, "zoning in" is point 2 and "indication" is point 3 and that an "indication" is a positive hit for narcotics.

64. VERNER was released from the scene at approximately 1:35 p.m. without receiving a ticket or any explanation for why he had been stopped.

65. VERNER missed his business meeting.

66. As a result of missing the business meeting, VERNER lost the ability to make a significant business profit.

67. Defendant MERONY failed to intervene and stop the violation of Plaintiff's civil rights, even though he had ample opportunity to do so.

68. Defendant MERONY acted in concert with GRATZ to violate Plaintiff's civil rights.

69. The acts complained of above by the Defendants, and each of them, proximately caused damage to Plaintiff, including, but not limited to:

   a. Seizure;
   b. Loss of liberty;
   c. Psychological harm, past and future;
   d. Degradation, humiliation, embarrassment, loss of reputation, loss of enjoyment of life, and past and future mental anguish;
   e. Lost income/business opportunity.

70. Defendants GRATZ and MERONY are not entitled to qualified immunity because the unconstitutionality of their actions and omissions was clearly established at the time of the events complained of herein.

## COUNT I
### (Violation of Fourth Amendment - 42 USC § 1983)
### Unreasonable Search and Seizure

71. Plaintiff restates and incorporates by reference each of the preceding paragraphs as though fully restated herein.

72. The acts of Defendants GRATZ and MERONY constituted an unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution where:

   a. Defendants had no reasonable suspicion that a crime or infraction had been committed that would justify a traffic stop

   b. Defendants had no reasonable suspicion to detain Plaintiff.

   c. Defendants' detention of Plaintiff was beyond the duration of time necessary to conduct an investigation and/or write any necessary ticket.

   d. Defendants continued to detain Plaintiff while awaiting for the arrival of a canine dog, despite not having any reasonable suspicion that evidence of narcotics trafficking would be found.

   e. Defendants searched the interior of the Plaintiff's vehicle without consent, while awaiting the arrival of a canine unit.

   f. Defendants caused the occurrence of a search of the inside of Plaintiff's vehicle with a canine without Plaintiff's consent.

73. Plaintiff's consent, if any, to a search of the inside of Plaintiff's vehicle with a canine was coerced by unreasonably detaining Plaintiff for over an hour in the back of their police car.

74. The actions of Defendants and/or failure to intervene and discontinue these unreasonable acts was a proximate cause of Plaintiff's injuries.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment against the individual Defendants GRATZ and MERONY, jointly and severally, in whatever amount that is fair, just and equitable for the injuries and damages, both compensatory and punitive, for the

unreasonable seizure, search and detention, together with interest, costs and attorney fees under 42 U.S.C. § 1988.

## COUNT II
### (Violation of Fourteenth Amendment - 42 USC § 1983)
### Equal Protection of the Laws

75. Plaintiff restates and incorporates by reference each of the preceding paragraphs as though fully restated herein.

76. Defendants violated the Plaintiff's rights under Fourth and Fourteenth Amendments to the United States Constitution because of his African American racial status and therefore violated his right to equal protection of the laws guaranteed by Fourteenth Amendment.

77. In and around November 2014, Defendant Southgate had a policy and practice of profiling and targeting African American and/or other none-white motorists travelling in the City, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

   a. This policy and practice is evidenced in part by the fact that Plaintiff was pulled over while travelling down the highway and obeying all traffic laws, while if Plaintiff had been white he would have been treated differently and allowed to continue to travel in the city without being subjected to a traffic stop.

   b. This policy and practice is evidenced in part by the fact that Plaintiff's vehicle was searched without consent or any facts supporting an exception to the warrant requirement, while if Plaintiff had been white he would have been treated differently and not have been subject to an unconstitutional search.

   c. This policy and practice is evidenced in part by the fact that Plaintiff was detained for a period of time greater than necessary to conduct a traffic stop solely for the purpose of bringing a police canine unit to conduct a search of the vehicle without any reasonable basis to believe contraband would be present, while if Plaintiff had been white he would have been treated differently and allowed to continue to travel in the city after the officers conducted their investigation and issued any necessary warnings or citations.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment against the Defendants GRATZ and MERONY, jointly and severally, in whatever amount that is fair, just and equitable for the injuries and damages, both compensatory and punitive, for the violation of his right to the

equal protection of the law, together with interest, costs and attorney fees under 42 U.S.C. § 1988.

## COUNT III
### (Violation of Fourteenth Amendment - 42 USC § 1983)
### Privileges and Immunities

78. Plaintiff restates and incorporates by reference each of the preceding paragraphs as though fully restated herein.

79. Defendants violated the Plaintiff's right to travel between the states pursuant to the privileges and immunities clause of Fourteenth Amendments to the United States Constitution by subjecting him to unconstitutional searches and seizures and violating his right to equal protection under the law.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment against the Defendants GRATZ and MERONY, jointly and severally, in whatever amount that is fair, just and equitable for the injuries and damages, both compensatory and punitive, for the violation of his right to travel, together with interest, costs and attorney fees under 42 U.S.C. § 1988.

## COUNT IV
### (42 USC § 1985(3))
### Conspiracy to Violate Civil Rights of Plaintiff

80. Plaintiff restates and incorporates by reference each of the preceding paragraphs as though fully restated herein.

81. Defendants GRATZ and MERONY conspired and acted in concert to violate Plaintiff's rights under Fourth and Fourteenth Amendments to the United States Constitution for the purpose of denying Plaintiff his right to equal protection of the laws and the privilege of freedom to travel due to his African American racial status and committed the acts complained of in furtherance of the conspiracy resulting in the injuries described in this complaint.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment against the Defendants GRATZ and MERONY, jointly and severally, in whatever amount that is fair, just and equitable for the injuries and damages, both compensatory and punitive, for conspiring to violate his constitutional rights, together with interest, costs and attorney fees under 42 U.S.C. § 1988.

## COUNT V
## (42 USC § 1983 and 1985(3))
## Municipal Liability

82. Plaintiffs restate and incorporate by reference each of the preceding paragraphs as though fully restated herein.

83. At all times herein, Defendant SOUTHGATE, through its supervisors and/or policymakers, established, promulgated, implemented, and/or maintained customs, policies, and/or practices which result in:

   a. Inadequately and/or failing to train, supervise, and/or discipline police officers and supervisors, with regard to the fact that conducting traffic stops of out-of-state drivers and passengers based on their status as African Americans and/or none-white person is a violation of the Fourth and Fourteenth Amendments to the United States Constitution and cannot be basis for a traffic stop, search or seizure;

   b. Inadequately and/or failing to train, supervise, and/or discipline police officers and supervisors, with regard to the fact that conducting traffic stops of drivers and passengers based on their status as African Americans and/or none-white person is a violation of the Fourth and Fourteenth Amendments to the United States Constitution and cannot be basis for a traffic stop search or seizure;

   c. Inadequately and/or failing to train, supervise, and/or discipline police officers and supervisors, with regard to the fact that conducting traffic stops of drivers and passengers without any reasonable suspicion of a violation of any criminal or traffic law is a violation of the Fourth and Fourteenth Amendments to the United States Constitution and cannot be basis for a search or seizure;

   d. Inadequately and/or failing to train, supervise, and/or discipline police officers and supervisors, with regard to the fact that a search of a driver's car where the officer lacks facts supporting reasonable suspicion of criminal activity and is without consent or warrant is a violation of the Fourth and Fourteenth

    Amendments to the United States Constitution and is an unreasonable search or seizure.

  e. Inadequately and/or failing to train, supervise, and/or discipline police officers and supervisors, with regard to the fact that seizing and detaining drivers and passengers beyond the time needed to write a ticket is a violation of the Fourth and Fourteenth Amendments to the United States Constitution and is an unreasonable search or seizure.

  f. Inadequately and/or failing to train, supervise, and/or discipline police officers and supervisors, with regard to the fact that seizing and detaining drivers and passengers for the purposes of waiting for a canine unit to arrive on scene without reasonable suspicion of criminal activity is a violation of the Fourth and Fourteenth Amendments to the United States Constitution and is an unreasonable search or seizure.

84. Further, Defendant SOUTHGATE maintained, encouraged, ratified, condoned and/or failed to take adequate steps to prevent its police officers from engaging in racial profiling in the course of law enforcement activities and investigations.

85. Each of the aforementioned customs, policies, and/or practices, i.e., the failures to train, supervise, and/or discipline the individual Defendants, was known to Defendant SOUTHGATE as being highly likely and probable to cause violations of the constitutional rights of members of the public and Plaintiff. Each such custom, policy, and/or practice was a moving force in the violations of Plaintiff's constitutional rights, as set forth herein.

86. Under 42 U.S.C. § 1983, municipal Defendants are "persons" liable for their unconstitutional policies, customs, and practices.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment against the Defendants SOUTHGATE in whatever amount that is fair, just and equitable for the injuries and damages, both compensatory and punitive, along with interest, costs and attorney fees under 42 U.S.C. § 1988.

                Respectfully submitted,

              By:__*/s/ Cynthia Heenan*_____
                Cynthia Heenan (P53664)
                Constitutional Litigation Associates, PC
                Attorneys for Plaintiff

Dated:  September 15, 2015

*\\cla-fs1\cladocs\cases\verner, keenan\pldgs\drafts\complt & jd final.doc*